UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PHILLIPS EXPLORATION, INC.,**

    **Plaintiff,**

    **v.**

**RICHARD E. REITZ,**

    **Defendant.**

Case No. 2:11-cv-920
**JUDGE GREGORY L. FROST**
**Magistrate Judge Norah McCann King**

**OPINION AND ORDER**

This matter is before the Court for consideration of Plaintiff's motion for summary judgment (ECF No. 42), Defendant's memorandum in opposition (ECF No. 44), and Plaintiff's reply memorandum (ECF No. 48). For the reasons that follow, the Court finds the motion well taken.

**I. Background**

In July 2006, Richard T. Reitz entered into an oil and gas lease with EOG Resources, Inc. ("EOG") concerning 321.96 acres that Reitz owns in Belmont County, Ohio. EOG subsequently assigned the lease in August 2007 to PC Exploration, Inc., which later became Phillips Exploration, Inc. ("Phillips"), the plaintiff in this action. The original five-year lease term expired on July 22, 2011, with the lease containing the following renewal provision:

> EXTENSION. This lease may, at Lessee's option, be extended as to all or part of the lands covered hereby for an additional primary term of FIVE (5) years commencing on the date that this lease would have expired but for the extension. Lessee may exercise its option by paying or tendering to Lessor an extension payment of $40.00 per net acre for the land then covered by the extended lease. Said bonus is to be paid or tendered to the Lessor in the same manner as provided

1

> for in Paragraph four (4) hereof with regard to the payment of delay rentals. If Lessee exercises this option, the primary term of this lease shall be considered to be continuous, commencing on the date of the lease and continuing from that date to the end of the extended primary term. If Lessee's operations are delayed or interrupted as a result of any coal mining operations under any existing and effective coal lease, such delay will automatically extend the primary term of this oil and gas lease for a period of time equal to any delay or interruption. Lessor hereby grants any such extensions of this lease without necessity of an amendment to said lease.

(ECF No. 42-2, at 10.) The incorporated manner of payment provision requires that "Lessee shall make or tender all payments due hereunder by check, payable to Lessor, at lessor's last known address, and Lessee may withhold any payment pending notification by Lessor of a change in address." (ECF No. 42-2, at 9.)

Prior to the expiration of the lease, Phillips sought to renew. On July 7, 2011, Phillips sent Reitz a check comprised of a combined payment for the annual delayed rental due under the lease and a payment for the lease renewal. Phillips sent the check to the same address it had used to mail checks to Reitz for 2008, 2009, and 2010, which was the address set forth in the lease. Reitz asserts that he never received the check. Phillips' records do not show that the check was returned as undeliverable, but Phillips offered to reissue the check to Reitz. Reitz has declined to accept a reissued check and argues that because he never received the original check, there has been no renewal.[1]

Reitz pursued a non-renewal. In June 2011, both the father and son Reitzes contacted counsel regarding their desire to obtain a new lease at the 2011 market rate. Counsel apparently

---

[1] As a result of a successful motion to substitute related to health issues, the actual defendant in this litigation is now Richard E. Reitz, the son of the original defendant, Richard T. Reitz. For ease of reference, the Court will treat the current defendant as the only Reitz ever involved, unless context necessitates specific identification.

advised Reitz to look for a certified letter from Phillips and to decline to accept the letter. Thereafter, on August 8, 2011, Reitz filed an Affidavit of Non-Production, Noncompliance, and Forfeiture with the Belmont County Recorder's Office. In this affidavit, he asserted that the lease had not renewed and that he would refuse to accept payment of delay rentals or royalties. Reitz subsequently executed a new oil and gas lease with another company for far more lucrative terms than the renewal lease terms.

Phillips filed the instant action on October 13, 2011, asserting five counts: declaratory judgment in Count One, breach of contract in Count Two, specific performance in Count Three, preliminary and permanent injunctive relief in Count Four, and slander of lease interest in Count Five. (ECF No. 1 ¶¶ 16-29.) The company seeks a declaration that the lease renewed until July 22, 2016, to compel Reitz to honor the renewed lease, and to recover damages for its state law claims. Phillips has filed a motion for summary judgment on the first three counts of its complaint, and the parties have completed briefing on the motion.

## II. Discussion

### A. Standard involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003)

3

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

The three counts involved in the motion for summary judgment all turn on whether Phillips renewed the lease.[2] Phillips argues that it effectuated a renewal of the lease until July 22, 2016, when it mailed Reitz the July 2011 check. As noted above, the lease provides for renewal by Phillips paying *or* tendering to Reitz the extension payment in the same manner as Phillips had to provide payment of the delay rentals. The lease also requires Phillips to make *or* tender all such payments by a check payable to Reitz at his last known address. Phillips asserts

---

[2] In regard to the Count Two breach of contract claim, Ohio law requires Phillips to establish the existence of a contract, performance by Phillips, breach by Reitz, and damage or loss to Phillips. *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (Ohio 2d Dist. Ct. App. 1994). Phillips seeks partial summary judgment on liability only.

4

that it complied with these requirements because it mailed Reitz the renewal check at his last known address, just as it had done for the prior years in regard to the delay rental payments. In other words, Phillips contends that because the lease and the parties' course of dealing employed the mailbox rule, Phillips renewed the lease when it tendered payment by mailing the check.

The core of the company's rationale for summary judgment is sound. Ohio law recognizes that the lease is a contract subject to traditional rules of interpretation and construction. One such rule is that this Court credit the plain and unambiguous language of the lease, which in this case means construing "tender" appropriately. Ohio case law instructs that " '[t]ender' generally means to offer or hold something out, especially in fulfillment of the requirements of law." *Vannoy v. Capital Lincoln-Mercury Sales, Inc.*, 88 Ohio App.3d 138, 147, 623 N.E.2d 177, 184 (Ohio 4th Dist. Ct. App. 1993). Ohio law also provides that "[t]he essential characteristics of a tender are an unconditional offer to perform, coupled with ability to carry out the offer and production of the subject matter of the tender." *Walton Commercial Enters., Inc. v. Ass'ns, Conventions, Tradeshows, Inc.*, No. 91AP-1458, 1992 WL 132451, at *2 (Ohio 10th Dist. Ct. App. June 11, 1992) . Thus, "[w]here one party tenders the other '. . . an amount reflecting the entirety of its legal obligation, that obligation is fulfilled . . . .' " *Id.* (quoting *Parker v. Unigard Ins. Co.*, 44 Ohio App. 2d 199, 201, 337 N.E.2d 181, 183 (Ohio 1st Dist. Ct. App. 1975)). The end result is that the lease plainly and unambiguously allowed Phillips to renew by *offering* its renewal check.

Another rule of Ohio law provides that as soon as Phillips offered the renewal check by placing it into the mail, Phillips renewed the lease regardless of whether Reitz ever actually

5

received the check. *Cf. Gold Key Lease, Inc. v. Hood*, No. 00 C.A. 185, 2001-Ohio-3367, 2001 WL 1137315, at *3 (Ohio 7th Dist. Ct. App. Sept. 20, 2001) ("[A]n acceptance transmitted in a form invited by the offer is operative as soon as it is put out of the offeree's possession, regardless of whether it ever reaches the offeror. The 'mailbox rule' states that in the absence of any limitation to the contrary in the offer, an acceptance is effective when mailed because the offeror has the power to condition the acceptance of the offer on actual receipt."). This is because the lease does not provide that renewal is effectuated only upon the actual receipt of payment. *See Casto v. State Farm Mut. Auto. Ins. Co.*, 72 Ohio App.3d 410, 413-14, 594 N.E.2d 1004, 1006-007 (1991) (applying mailbox rule in absence of contractual provision requiring receipt of payment to effectuate renewal); *see also Adams v. Colonial Ins. Co. of Calif.*, 121 Ohio App.3d 122, 124-25, 699 N.E.2d 112, 113 (Ohio 8th Dist. Ct. App. 1997). Nor does the lease require that the offer of payment be made by mail; personal delivery would have sufficed as well.[3] Rather, the lease provides either actual payment or tendering of payment to the last known address is sufficient to accomplish renewal. The disjunctive phrasing employed means that the latter option of tendering is enough.

---

[3] Reitz attempts to make much of the fact that the new leases his counsel was negotiating specifically made mention of the use of mail, as well as the fact that a case upon which Phillips relies, *Hitz v. Ohio Fuel Gas Co.*, 43 Ohio App. 484, 183 N.E. 768 (Ohio 5th Dist. Ct. App. 1932), included a specific provision permitting mailing. The former argument relies on negotiations for other contracts with other companies to inform the contract *sub judice* without providing support for the proposition that greater detail considered for other documents logically informs the meaning of the document actually at issue. The latter argument similarly ignores the scope of Phillips' lease language, which as noted is not qualified. Because the contractual language does not limit the manner of tender, offer by mail or personal delivery falls fairly within the lease. The *Hitz* lease may have been more specific, but that case does not stand for the proposition that such explicit specificity is required. Nor is *Hitz* distinguishable due to its express inclusion of what is implied in the instant lease.

There is no dispute of fact as to whether Phillips mailed the renewal check in a timely and proper manner to the appropriate address. Similar to the oil and gas lessee in *Hitz v. Ohio Fuel Gas Co.*, 43 Ohio App. 484, 489, 183 N.E. 768, 769 (Ohio 5th Dist. Ct. App. 1932), if the check was properly prepared, addressed, stamped, and mailed, then Phillips was not bound to see to its delivery. Instead, Phillips had only the remaining duty to tender payment promptly a second time when notified and convinced of the non-receipt and loss of its issued check, which it attempted to do. *Id.* Phillips thus performed under the contract constituting the lease, and Reitz is bound by the effects of that performance.

Reitz disagrees with the foregoing analysis. Agreeing that there is no ambiguity in the lease (ECF No. 44, at 10), Reitz argues that the plain and unambiguous language of the lease necessarily requires receipt and acceptance of the renewal payment to effectuate an extension. He asserts that absent a contrary expression of intent, tender is incomplete until acceptance occurs. This reading does damage to the contract terms, however, because it conflates without textual support payment with tender so as to render the last portion of "paying or tendering" mere surplusage. Ohio law mandates that

> [i]n reviewing the language of a contract, [courts] must be mindful that [their] overriding goal is to give effect to the parties' intentions, which are presumed to reside in the plain language of the contract. Also, a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage.

*Local Mktg. Corp. v. Prudential Ins. Co.*, 159 Ohio App.3d 410, 414, 2004-Ohio-7001, at ¶ 8, 824 N.E.2d 122, 125 (Ohio 1st Dist. Ct. App. 2004) (footnoted omitted). To accept Reitz's premise would be to read "tender" as wholly synonymous with "payment" so that the nuances of

7

Ohio law regarding tendering and the mailbox rule would fall away in favor of accepting curious redundancy as intentional. There is no textual basis for such a strained reading of what is a simple lease provision.[4]

Also unpersuasive is Reitz's alternative argument that Phillips cannot prevail on any of its claims because Phillips is not in privity with Reitz, is not a proper party in interest, and has failed to join EOG. In making this argument, Reitz relies upon Ohio Revised Code § 5301.09, which provides that

> All leases, . . . and assignments thereof, . . . given or made concerning lands or tenements in this state, by which any right is granted to operate or to sink or drill wells thereon for natural gas and petroleum or either, or pertaining thereto, shall be filed for record and recorded in such lease record without delay, and shall not be removed until recorded.

Ohio Rev. Code § 5301.09. Reitz also direct this Court to Ohio Revised Code § 1509.31(A), which provides that

> [w]henever the entire interest of an oil and gas lease is assigned . . . the assignor . . . shall notify the holders of the royalty interests . . . of the name and address of the assignee or transferee by certified mail, return receipt requested, not later than thirty days after the date of the assignment or transfer.

Ohio Rev. Code § 1509.31(A). Reitz asserts that none of these statutorily mandated events took place.

Phillips of course disagrees with Reitz. The company points out that there was proper recording under § 5301.99 (ECF No. 42-3, at 3)[5] and that, because it is the assignee of the lease

---

[4] Given that the lease language is plain and unambiguous, the Court need not reach the parties' debate regarding whether their course of dealing would properly factor into today's analysis of whether a renewal occurred.

[5] Even setting aside the plain language of § 5301.09, Reitz's contention that the lack of a

and not the assignor, it had no duty to comply with § 1509.31(A) notice requirement. Phillips also notes that although the statutory scheme provides for civil and criminal penalties, none of these penalties include invalidation of the lease assignment as Reitz urges this Court to accept.

The one case to which Reitz directs this Court as supporting invalidation of a purported assignment fails to provide the persuasive support Reitz assigns it. In *Ohio Energy Assets v. Solid Rock Energy, Inc.*, an Ohio court of appeals considered whether a company could sue for breach of an oil and gas lease to which that company was not a party. No. 03CA6, 2003-Ohio-6315, 2003 WL 22780854 (Ohio 4th Dist. Ct. App. Nov. 18, 2003). That intermediate state court rejected the contention that an assignment of the lease existed that would enable the company to maintain an action on the lease. The court of appeals cited four reasons for rejecting the purported assignment, one of which was that a letter presented as assigning the lease was not recorded as would be required by statute. Notably, that court presented no analysis or even discussion on this point beyond simply noting the lack of recording.

Reitz overreaches in relying on *Ohio Energy Assets* as recognizing a condition precedent that proves dispositive here. That case contained additional reasons undercutting the proposition that an assignment of the lease involved was actually intended so that the failure to record was but one more factor suggesting that no assignment was intended or effectuated. But the case does not state that a failure to record invalidates an attempted assignment as a matter of law. The distinction is important. Rather than stating a bright line rule for assignment invalidation, *Ohio*

---

marginal notation leads to no assignment ignores that Ohio Revised Code §§ 5301.33 and 5301.37 would permit recording by a separate instrument given the fact that the Belmont County recorder uses an electronic recording system that results in no physical margin being available.

*Energy Assets* only treats a failure to record as a factor to be considered in ascertaining whether an assignment has occurred.  Accordingly, even assuming *arguendo* that there was not compliance with the recording statute, this Court declines Reitz's invitation to read too much into both *Ohio Energy Assets* and the effect of the statutes discussed above.

The Court also rejects Reitz's argument that there cannot have been a renewal because the lease was void *ab initio* in the first instance.  This argument posits that because the lease permitted an extension without the lessee implementing oil and gas production, it is void and unenforceable as violative of the Ohio public policy supporting production of oil and gas.  A number of points render this argument unpersuasive.[6]

First, there is no perpetual lease here.  Contrary to Reitz's characterization of the lease, the extension provision permits only one five-year renewal and does not enable perpetual extensions that would present a "no term" lease.  *See* ECF No. 42-2, at 10 ("This lease may, at Lessee's option, be extended as to all or part of the lands covered hereby for *an* additional primary term of FIVE (5) years commencing on the date that this lease would have expired but for the extension." (emphasis added)).  To the extent that any arguable ambiguity exists that might present an interpretation leading to a right of perpetual renewal, the fact that Ohio law directs this Court and the parties to adhere to the construction of the lease that avoids perpetual duration undercuts Reitz's public policy grounds.  *See Regency Plaza, LLC v. Morantz*, No. 06AP-837, 2007-Ohio-2594, at ¶ 19, 2007 WL 1536812, at *5 (Ohio 10th Dist. Ct. App. May

---

[6] It is also notable, although not an analytic point, that Reitz accepted the lease as enforceable year after year and cashed the annual checks involved.  It is only when he recognized that circumstances had changed and that better deals were available did he suddenly find the lease as void from the beginning.

10

29, 2007) (citing the general rule that where possible, a lease is to be construed so as to avoid perpetuity by renewal).  The lack of a perpetual lease alone defeats Reitz's application here of the distinguishable *Hupp v. Beck Energy Corp.*, No. 2011-345 (Monroe Cnty. Ct. Com. Pl. filed July 12, 2012).

Second, even if there is a perpetual lease here—and again, there is not—it would not invariably mandate proclaiming the lease void as against public policy.  Although Ohio disfavors perpetual leases, it nonetheless permits them when that is what the parties intended.  *See Myers v. East Ohio Gas Co.*, 51 Ohio St.2d 121, 364 N.E.2d 1369 (1977); *Hoffman v. Foster & Keiser, Inc.*, No. 44134, 1982 WL 5385, at *2-3 (Ohio 8th Dist. Ct. App. May 27, 1982) (collecting cases discussing perpetual leases).

Having determined that Reitz's void *ab initio* argument also fails for at least two distinct reasons, the Court need not address Phillip's moot contention that Reitz's pleading waived the entire public policy defense.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Phillip's motion for summary judgment. (ECF No. 42.)  Phillips is entitled to judgment as a matter of law on Counts One and Three. Phillips is also entitled to summary judgment on the issue of liability on its Count Two breach of contract claim, with the issue of damages (if any exist) remaining for trial.

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE